EMBREE CONSTRUCTION GROUP, INC. v. RAFCOR, INC., UNITED CAROLINA BANK, ANTHONY J. SAPIENZA, RONALD THOMAS TEDESCO AND FREDERICK ANTHONY OCCHINO

No. 132A90

(Filed 10 January 1992)

**1. Quasi Contracts and Restitution § 1.2 (NCI3d) — construction loan — denial of final payments — unjust enrichment**

Plaintiff's complaint was sufficient to state a claim for relief in the form of an equitable lien based upon unjust enrichment where plaintiff alleged that it was a construction contractor who entered into a contract with Rafcor for the construction of a restaurant; Rafcor entered into a construction loan agreement with United Carolina Bank; plaintiff periodically submitted applications for project payments to Rafcor which UCB paid directly to plaintiff from the construction loan; plaintiff's last two applications for payment after completion of the restaurant were not paid; the loan was not in default when plaintiff notified UCB of the outstanding debt and requested that the remainder of the fund be disbursed; and UCB nevertheless retained and refused to disburse the $70,000 remaining in the loan fund to plaintiff and was unjustly enriched because it received all the security for which it had bargained (a completely constructed building) while refusing to pay the $70,000. The circumstances of this case are not among those for which Chapter 44A provides statutory remedies.

———————————

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

Am Jur 2d, Restitution and Implied Contracts §§ 4, 8, 153.

2. **Contracts § 189 (NCI4th) — construction loan — final payments not made — tortious interference with contract**

It was sufficient, under the liberal concept of notice pleading, for plaintiff to allege the existence of a valid contract between itself and Rafcor entitling plaintiff to payment from a construction loan fund, that defendant Tedesco and Occhino knew of this contract and intentionally induced Rafcor not to perform in their own interest to avoid further liability under their personal guarantees, and that in so doing they acted without justification to plaintiff's detriment. These allegations give sufficient notice of the events on which the claim is based to enable defendants to respond and prepare for trial and are sufficient to satisfy the substantive elements of the claim of tortious interference with contract.

Am Jur 2d, Interference §§ 41, 44.

Liability for procuring breach of contract. 26 ALR2d 1227.

ON appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 97 N.C. App. 418, 388 S.E.2d 604 (1990), reversing orders entered on 3 February 1989 and 13 February 1989 by *Snepp, J.*, allowing defendants' motions to dismiss at the 1 February 1989 session of Superior Court, MECKLENBURG County. Heard in the Supreme Court 11 October 1990.

*Perry, Patrick, Farmer & Michaux, P.A., by Roy H. Michaux, Jr., and Timothy E. Cupp, for plaintiff-appellant.*

*Petree, Stockton & Robinson, by Jackson N. Steele and B. David Carson, for defendant-appellee United Carolina Bank.*

*Cassstevens, Hanner, Gunter & Gordon, P.A., by Marc R. Gordon, for defendant-appellees Tedesco and Occhino.*

EXUM, Chief Justice.

In this appeal we examine the sufficiency of a complaint to state a claim regarding two issues: (1) whether a contractor who

alleges it satisfactorily completed the construction project is entitled to equitable relief in order to reach the balance of loan funds withheld by a construction lender, and (2) whether officers and directors of the owner corporation with which he contracted to build the project tortiously interfered with that contract by thwarting final payment. In accord with the attitude of liberal construction that notice pleading inspires, we hold plaintiff alleged facts sufficient to state both claims.

I.

In a complaint filed 17 November 1988, plaintiff, a construction contractor, alleges it entered into a contract with defendant Rafcor on 20 October 1987 to supply labor and materials for the construction of a restaurant in Mecklenburg County. Plaintiff alleges its work was completed according to the plans and specifications prescribed by the contract and that Rafcor owes plaintiff a balance of $110,383, including $32,973 for extra work and delay claims. Plaintiff alleges Rafcor has refused its demand to pay this amount.

Plaintiff further alleges Rafcor entered into a construction loan agreement with United Carolina Bank (UCB) in which UCB was "obliged to advance to Rafcor the sum of $942,500 to be used specifically for the construction of the project." Rafcor's note to this effect was secured by a deed of trust on the project. Throughout construction plaintiff periodically submitted applications for progress payments to Rafcor, which UCB paid directly to plaintiff from Rafcor's construction loan. Rafcor occupied the building in February 1988, and plaintiff completed its work in March 1988. Plaintiff's last two applications for payment after completion of the restaurant in March were not paid. By letter dated 8 July 1988 plaintiff notified UCB of the sum due and requested that the funds remaining in the construction loan be disbursed to plaintiff. Plaintiff alleges Rafcor's loan was not in default when plaintiff notified UCB as to the outstanding debt and requested that the remainder of the fund be disbursed. UCB nevertheless retained and refused to disburse the $70,000 remaining in the loan fund to plaintiff. Plaintiff alleges UCB has received all the security for which it bargained with Rafcor—a completely constructed building—and because it has refused to pay the $70,000 remaining in the loan fund, UCB has been unjustly enriched at plaintiff's expense.

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

Plaintiff alleges in addition that defendants Tedesco and Occhino, officers and directors of Rafcor who personally guaranteed Rafcor's note with UCB, intentionally induced Rafcor not to make further draws from UCB in order to limit their personal liability to UCB.

The superior court allowed motions to dismiss filed by UCB and by Tedesco and Occhino. A divided panel of the Court of Appeals reversed. The majority deemed plaintiff's claim against UCB as an equitable lien on the construction loan balance, reasoning plaintiff was entitled to equitable relief because it had completed construction in reliance on the disbursal of the fund when the owner was not in default. The majority also reversed the superior court's dismissal of plaintiff's claim against defendants Tedesco and Occhino. Noting that the right of officers and directors to interfere with the contracts of their corporation is limited, the Court of Appeals held that plaintiff's complaint stated facts sufficient to support its allegation that the individual defendants' acts had been in their own interest and adverse to that of their firm, thus exposing them to individual liability for an individual tort. 97 N.C. App. at 423, 388 S.E.2d at 607-08.

The dissent observed that no occasion for equitable intervention by the courts arises when a remedy at law is available and opined that under the circumstances of this case plaintiff's remedies are limited to the lien procedures of N.C.G.S. §§ 44A-7 through 44A-23. Because "the creditor possesses an interest only to the extent of the amount disbursed," UCB was not unjustly enriched. 97 N.C. App. at 424, 388 S.E.2d at 608 (Greene, J., dissenting). "Any value of the building in excess of that amount, presumably the value added by the contractor for which the contractor was not paid, cannot be considered a windfall for the creditor since the creditor has no interest in that value." *Id.* The dissent also disagreed with the majority regarding plaintiff's allegations of tortious interference with contract by defendants Tedesco and Occhino, indicating plaintiff had failed to allege that the defendants' acts were adverse to Rafcor's interests.

II.

[1] On motion to dismiss a complaint for failure to state a claim, the complaint's factual allegations are taken as true. The court must determine whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events that produced the claim to enable the

**EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.**

[330 N.C. 487 (1992)]

adverse party to prepare for trial. *Peoples Security Life Ins. Co. v. Hicks*, 322 N.C. 216, 218, 367 S.E.2d 647, 648-49, *reh'g denied*, 322 N.C. 486, 370 S.E.2d 227 (1988). "A complaint should not be dismissed under Rule 12(b)(6) 'unless it affirmatively appears that the plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim.'" *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 298 S.E.2d 751, 755 (1985) (quoting *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)). In practice, "[t]he system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Ladd v. Estate of Kellenberger*, 314 N.C. at 481, 298 S.E.2d at 755.

Plaintiff's allegations that UCB retained the balance of the construction loan despite plaintiff's completion of the project underlie its claim that UCB has been unjustly enriched and that the balance of the loan fund constitutes a "trust fund" on which plaintiff has an equitable lien.

The court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff, as the dissent correctly notes. "[E]quity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Insurance Co. v. Guilford County*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945). Thus when the remedy of foreclosure is available, a plaintiff cannot rely upon a restitution theory to recover the balance of a promissory note secured by a deed of trust. *Id.* at 301, 34 S.E.2d at 434. And restitution is not available on a claim of unjust enrichment for a subcontractor who failed to utilize the remedies of Chapter 44A when these would have given him adequate relief. *Jones Cooling & Heating v. Booth*, 99 N.C. App. 757, 394 S.E.2d 292 (1990), *disc. rev. denied*, 328 N.C. 732, 404 S.E.2d 869 (1991).

As alleged,[1] however, the circumstances of this case are not among those for which Chapter 44A supplies a remedy. Section 44A-8 provides, in pertinent part:

---

1. Reasons why the remedies of Chapter 44A would not satisfy a claim against Rafcor for the remainder of the construction fund are not articulated in plaintiff's complaint. In its brief UCB argues plaintiff filed a claim of lien on 1 July 1988 but failed to perfect the lien within 180 days. Had plaintiff perfected its claim, it could have forced a sale of the improved property and thus "would have been protected to the extent intended by Chapter 44A." Plaintiff responds that because UCB's mortgage interest was superior to plaintiff's lien, plaintiff's interest was cut off, virtually obliterating any likelihood plaintiff would collect either the $110,383

> Any person who performs or furnishes labor or . . . materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this article, have a lien on such real property to secure payment of all debts owing for labor done or . . . material furnished pursuant to such contract.

N.C.G.S. § 44A-8 (1989). The purpose of this lien statute is to protect the interest of the contractor, laborer or materialman. *See, e.g., Carolina Builders Corp. v. Howard-Veasey Homes, Inc.,* 72 N.C. App. 224, 324 S.E.2d 626, *disc. rev. denied,* 313 N.C. 597, 330 S.E.2d 606 (1985). "[T]he materialman, rather than the mortgagee, should have the benefit of materials that go into the property and give it value." *Id.* at 229, 324 S.E.2d at 629. The lien statute requires contractors and subcontractors to whom a debt is owed for work done or material supplied to file a claim of lien within 120 days of the last furnishing of labor or materials to the site of the improvement. The lien must be perfected by filing suit within 180 days of last furnishing. N.C.G.S. § 44A-13 (1989). The lien secures the right of the claimant to amounts earned whether or not the funds are due or the claimant's job is complete. *See* N.C.G.S. §§ 44A-8, 44A-18(5) (1989). Absent express or implied contract, however, the statutory lien is unavailable. N.C.G.S. § 44A-8 (1989). *See, e.g., Air Conditioning v. Douglass,* 241 N.C. 170, 174, 84 S.E.2d 828, 832 (1954); *Investors, Inc. v. Berry,* 32 N.C. App. 642, 647, 234 S.E.2d 6, 9 (1977); *Wilson Elec. Co. v. Robinson,* 15 N.C. App. 201, 189 S.E.2d 758 (1972). Thus Chapter 44A does not provide relief for the contractor or subcontractor, in privity of contract with only the insolvent owner, who seeks payment from construction loan funds held by the lender. Notably, however, Chapter 44A does not expressly bar equitable relief to this end. *Cf.* Cal. Civ. Code § 3264 (West 1974).

Commentators, too, have observed that the statutory remedies of Chapter 44A include no relief "against the construction lender or the funds in his hands." William H. Higgins, *Construction Lending—General Contractor v. Lender,* 54 N.C. L. Rev. 952, 954

---

it was owed or the $70,000 remaining in the loan fund. UCB did in fact foreclose on the property on 30 December 1988, effectively cutting off any subordinate liens. In addition, the contract between plaintiff and Rafcor stated final payment would not become due until all liens arising out of the contract were released.

**EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.**

[330 N.C. 487 (1992)]

(1976) [hereinafter Higgins]. The remedies available under Chapter 44A are "often of no practical value" for the very reasons plaintiff here seeks equitable relief. *Id.* at 953. When a contractor's lien is subordinate to a construction loan mortgage, as here, or to prior encumbrances such as a purchase money mortgage, any lien on the owner's property or its improvements is worthless when the owner is insolvent. *Id.* at 954 n.10. *Cf. Carolina Bldrs. Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 324 S.E.2d 626 (when construction loan deed of trust is recorded prior to purchase money deed of trust and materialman's lien antedates both, lien takes precedence). *See also* Edmund T. Urban and James W. Miles, Jr., *Mechanics' Liens for the Improvement of Real Property: Recent Developments in Perfection, Enforcement, and Priority*, 12 Wake Forest L. Rev. 283, 349 (1976) [hereinafter Urban and Miles].

In other jurisdictions, attempts made to reach construction funds remaining with the lender under equitable assignment, third party beneficiary, and trust fund theories have been generally unsuccessful. Higgins at 954 n.12. *See also* Edmund T. Urban, *Future Advances Lending*, 13 Wake Forest L. Rev. 297, 343 n.281 (1977) [hereinafter Urban]. *E.g., Gordon Building Corp. v. Gibraltar Sav. & Loan Ass'n*, 247 Cal. App. 2d 1, 55 Cal. Rptr. 884 (Cal. Ct. App. 2d Dist. 1966) (contractor seeking equitable lien on construction loan proceeds did not state a cause of action based on third-party beneficiary theory nor facts sufficient to support theory of reliance). Federal cases, however, have held that contractors can sue as third-party beneficiaries of building loan agreements on projects where funding is insured by the Department of Housing and Urban Development (HUD). *See, e.g., Spring Const. Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977); *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C. Cir. 1976); *Bennett Constr. Co. v. Allen Gardens, Inc.*, 433 F. Supp. 825 (W.D. Mo. 1977); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F. Supp. 164 (D.V.I. 1975); *Travelers Indem. Co. v. First Nat'l State Bank*, 328 F. Supp. 208 (D.N.J. 1971).

Attempts to obtain relief in the form of an equitable lien based on a theory of detrimental reliance or unjust enrichment have been more fruitful, most notably in California[2] and Florida. *E.g.*,

---

2. Controversy wrought by the liberal application of the equitable lien by California courts, *see, e.g.*, Lefcoe & Shaffer, *Construction Lending and the Equitable Lien*, 40 S. Cal. L. Rev. 439 (1967), inspired an amendment to the California lien

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

*Pacific Ready Cut Homes v. Title Ins. & Trust Co.*, 216 Cal. 447, 14 P.2d 510 (1932) (per curiam) (lender who had received more valuable security in form of completed building not justified in withholding funds intended to pay for plaintiff's performance, upon which latter had relied); *Smith v. Anglo-California Trust Co.*, 205 Cal. 496, 271 P. 898 (1928) (owner's and lender's conduct induced lien claimant to rely upon construction loan fund); *Miller v. Mountain View Sav. & Loan Ass'n*, 238 Cal. App. 2d 644, 661, 48 Cal. Rptr. 278, 290 (Cal. Ct. App. 1 Dist. 1965) (plumber's work done in reliance on fund; lender not justified in withholding money intended to pay for work where received benefit of worker's performance); *Swinerton & Walberg Co. v. Union Bank*, 25 Cal. App. 3d 259, 101 Cal. Rptr. 665 (Cal. Ct. App. 2d Dist. 1972) (general contractor induced by and who relied upon construction loan proceeds entitled to equitable lien when lender has received benefit of claimant's full performance); *Doud Lumber Co. v. Guaranty Sav. & Loan Ass'n*, 254 Cal. App. 2d 585, 60 Cal. Rptr. 94 (Cal. Ct. App. 1 Dist. 1967) (supplier entitled to equitable lien on construction loan fund when induced by lender to rely upon fund for payment); *McBain v. Santa Clara Sav. & Loan Ass'n*, 241 Cal. App. 2d 829, 51 Cal. Rptr. 78 (Cal. Ct. App. 1 Dist. 1966) (equitable lien based on subcontractors' reliance on loan fund; unjust enrichment need not be proven); *Hayward Lumber & Invest. Co. v. Coast Federal Sav. & Loan Ass'n*, 47 Cal. App. 2d 211, 117 P.2d 682 (Cal. Ct. App. 2d Dist. 1941) (owners and lenders estopped to withhold construction funds, on which claimants entitled to equitable lien); *Peninsular Supply Co. v. C.B. Day Realty*, 423 So. 2d 500 (Fla. Dist. Ct. App. 1982) (lien law not intended to permit unjust enrichment, thus subcontractor who failed to perfect statutory lien entitled to equitable lien on construction loan balance); *Blosam Contractors, Inc. v. Republic Mortgage Investors*, 353 So. 2d 1225 (Fla. Dist. Ct. App. 1977), *cert. denied*, 359 So. 2d 1218 (Fla. 1978) (when lender unjustly enriched by realizing on its security without dis-

---

statute, Cal. Civ. Code § 3264 (West 1974), which bars any equitable relief outside the contract or the statute. *See Boyd v. Lovesee Lumber Co. v. Western Pacific Financial Corp.*, 44 Cal. App. 3d 460, 465, 118 Cal. Rptr. 699, 701 (4th Dist. 1975). California's unique stop-notice statute nevertheless provides a remedy for contractors or subcontractors against a lender wrongfully withholding construction loan funds by enjoining further disbursements. *See* Cal. Civ. Code §§ 3156-3172 (West 1974). The stop-notice procedures provide a means by which funds held by a lender can be garnished, and such garnishment survives any foreclosure. *See Connelly Development, Inc. v. Superior Court*, 17 Cal. 3d 803, 553 P.2d 637, 132 Cal. Rptr. 477 (1976).

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

bursing balance of loan proceeds, equitable lien should have been granted); *Morgen-Oswood & Associates, Inc. v. Continental Mortgage Investors*, 323 So. 2d 684 (Fla. Dist. Ct. App. 1975), *cert. dismissed*, 342 So. 2d 1100 (Fla. 1977) (general contractor entitled to equitable lien against undisbursed construction loan proceeds because lender unjustly enriched to that extent).

When unjust enrichment underlies an equitable lien, some courts have considered completion of the plaintiff's work — or of the project itself — critical. In *Urban Systems Development Corp. v. NCNB Mortgage Corp.*, 513 F.2d 1304 (4th Cir. 1975), the Fourth Circuit held a general contractor could not reach undisbursed funds held by two construction lenders in part because "neither institution had received the security for which it had bargained." *Id.* at 1305. *See also Pioneer Plumbing Supply Co. v. Southwest Sav. & Loan Ass'n*, 102 Ariz. 258, 428 P.2d 115 (1967) (plumbers not entitled to equitable lien on loan proceeds when project not completed); *Morgen-Oswood and Associates, Inc. v. Continental Mortgage Investors*, 323 So. 2d 684 (mortgage lender unjustly enriched by enjoying benefit of the security — a completed hotel — in addition to retaining some funds owed the contractor). *See generally* Urban at 342; Daniel E. Feld, Annotation, *Building and Construction Contracts: Contractor's Equitable Lien Upon Percentage of Funds Withheld by Contractee or Lender*, 54 A.L.R.3d 848 (1973).

Plaintiff avers that by UCB's refusal to disburse the monies remaining in the construction loan fund, coupled with its receipt of all the security for which it bargained in the form of a completed building, UCB was unjustly enriched. We agree. As of completion of the building in March 1988, UCB had received all the security for which it had bargained with Rafcor. UCB's subsequent refusal to release the balance of the construction loan caused it to be unjustly enriched at the expense of plaintiff.[3]

---

3. This situation differs markedly from that in which the lender has disbursed all loan funds to the borrower, who diverts the funds to purposes other than paying contractors. *See* Lefcoe & Shaffer, *Construction Lending and the Equitable Lien*, 40 S. Cal. L. Rev. 444 (1967) (if funds disbursed once already, lender not unjustly enriched); Urban and Miles at 350 ("[T]here is justification for the [equitable lien] doctrine's application when the contractor has completed performance, the entire project itself is completed, and the lender forecloses, becoming the owner of the completed project seeking to retain undisbursed funds. But there is little justification for the doctrine's application when the lender has made a disbursement for all labor or materials furnished up through foreclosure without any knowledge of any unpaid claims, and funds are diverted from the project by the borrower.

**EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.**

[330 N.C. 487 (1992)]

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 555-56, *reh'g denied*, 323 N.C. 370, 373 S.E.2d 540 (1988) (quoting the Restatement of Restitution § 1 (1937)). "A person entitled to restitution is entitled, in an appropriate case, to a remedy by a proceeding in equity." Restatement of Restitution § 160 introductory note (1937). Such remedies include decrees establishing and enforcing a constructive trust upon property, a constructive lien upon property, or the plaintiff's subrogation to the position of another against the defendant. *Id.* An equitable lien arises "[w]here property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched." Restatement of Restitution § 161 (1937). "Where the equitable lien is on a fund, for example a bank deposit, it is enforced by a direction to pay the claimant out of the fund." *Id.*

Several federal courts considering suits by contractors involved in building projects whose loans were insured by HUD have held retainages and construction loan balances generally constitute an identifiable *res* upon which an equitable lien may be attached. In *Spring Const. Co. v. Harris*, 562 F.2d 933, the Fourth Circuit held HUD would be unjustly enriched, despite selling the project at a loss, if plaintiff was not compensated for the work it expended in enhancing the value of the project. The court said the balance of construction loan proceeds and retainages intended to compensate the plaintiff constituted an identifiable *res* upon which an equitable lien could attach. In *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, the Court of Appeals for the District of Columbia Circuit similarly held undisbursed mortgage proceeds created by a holdback constituted an identifiable *res* upon which an equitable lien could be placed to avoid unjust enrichment of HUD from services rendered by plaintiff. *See also, e.g., Bennett Constr. Co. v. Allen Gardens, Inc.*, 433 F. Supp. 825 (final contract draw and holdback retainages specifically designated as part of total sum due plaintiff constitute identifiable *res* upon which equitable lien may attach); *F. W. Eversley & Co. v. East New York Non-Profit H.D.F.C., Inc.*, 409 F. Supp. 791 (S.D.N.Y. 1976) (no-asset, non-profit organizations' building loan agreements insured by HUD; escrow

---

In that instance, application of the doctrine results in the inequity of the lender having to in effect pay twice for the same thing. Any application of the doctrine, therefore, should be restricted to obvious cases of unjust enrichment.").

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

funds and retainages constitute identifiable *res* upon which to place equitable lien). *But see Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 (2d Cir. 1985) (declining to follow "vague formulation" of *Trans-Bay Engineers* in order to find plaintiff's claims "rooted in . . . equitable rights generated by HUD's course of activities pursuant to federal statutes").

Accepting as true plaintiff's allegations that as of March 1988 it completed the project but was refused its applications for payment from the balance of the construction loan fund held by UCB, we hold plaintiff's complaint was sufficient to state a claim for relief in the form of an equitable lien based upon UCB's unjust enrichment.

### III.

[2] Plaintiff also alleges defendants Tedesco and Occhino, who personally guaranteed Rafcor's note with UCB, had actual knowledge of Rafcor's obligations to pay plaintiff for amounts due under the contract, that they intentionally induced Rafcor not to pay amounts requested in plaintiff's last two applications for payment nor to request UCB to draw funds from the construction loan fund to pay plaintiff, and in so doing "acted without justification and in their own interest to avoid further liability to UCB under their guarantees." Plaintiff alleges these facts support a claim for tortious interference with contract.

The Court of Appeals held plaintiff alleged all the elements of that tort. It surmised the trial court granted defendants' motion to dismiss under the mistaken impression that the element that defendants had acted without justification "[could not] be established since defendants, as officers and directors of the contracting corporation, had the right and duty to act for the company in regard to its contracts and other business." 97 N.C. App. at 423, 388 S.E.2d at 607. The majority noted that the right of officers or directors to interfere with the contracts of their corporation is limited: the officer or director may be liable when the tort is individual and distinguishable from acts on the corporations' behalf or when the officer's or director's acts "are performed in his own interest and adverse to that of his firm." *Id.* at 423, 388 S.E.2d at 607 (quoting *Wilson v. McClenny*, 262 N.C. 121, 133-34, 136 S.E.2d 569, 578 (1964)).

The dissent considered plaintiff's allegations incomplete for failure to add that the acts of defendants Tedesco and Occhino had been "adverse" to the interests of their firm.

The elements of tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). *See also Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. 216, 220, 367 S.E.2d 647, 649-50 (1988); *Wilson v. McClenny,* 262 N.C. at 132, 136 S.E.2d at 577-78; *Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954), *reh'g dismissed,* 242 N.C. 123, 86 S.E.2d 916 (1955).

Whether an actor's conduct is justified depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. at 221, 367 S.E.2d at 650. Generally speaking, interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors. *Id.* at 221-22, 367 S.E.2d at 650.

In the context of interference with contract by an insider, however, the element that the defendant acted without justification is potentially vitiated by the defendant's corporate position. Officers, directors, shareholders, and other corporate fiduciaries have "a qualified privilege to interfere with contractual relations between the corporation and a third party." *Wilson v. McClenny,* 262 N.C. at 133, 136 S.E.2d at 578. "The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation." *Id.* at 133-34, 136 S.E.2d at 578.

The privilege, however, is qualified, not absolute; the presumption that an officer's acts are in the corporation's interest and thus justified is overcome when the means or the officer's motives are improper. *See id.* at 133, 136 S.E.2d at 578. "The better rule,

EMBREE CONSTRUCTION GROUP v. RAFCOR, INC.

[330 N.C. 487 (1992)]

which is apparently followed by most courts, does not grant absolute protection to corporate directors. In short, those who act for their *own* benefit may be held personally liable." Alfred Avins, *Liability for Inducing a Corporation to Breach its Contract*, 43 Cornell L.Q. 55, 58 (1957) [hereinafter Avins]. Our conclusion that a plaintiff states the fourth element of the claim of tortious interference with contract when he alleges facts supporting the allegation that the individual defendants' actions were in their personal interest is supported by three reasons:

First, the qualified privilege of officers and directors to interfere with the corporation's contracts rests upon the assumption that their actions are "in good faith and for the best interests of their corporation." *Wilson v. McClenny*, 262 N.C. at 133, 136 S.E.2d at 578 (quoting Avins at 65). The question of "good faith" is one of fact to be resolved by the jury and cannot be resolved on a motion to dismiss. *L & H Inv., Ltd. v. Belvey Corp.*, 444 F. Supp. 1321, 1325 (W.D.N.C. 1978). Therefore, insofar as the element "without justification" evokes inquiry into defendants' motives, it is enough to allege, as plaintiff did, that the action was done "in their own interest to avoid liability to UCB for their [personal] guarantees."

Second, it is unreasonable to require the plaintiff to negate in its pleadings facts that more properly support a defense. One California appellate court, reciting elements of tortious interference with contract similar to those recognized in North Carolina,[4] has held: "Unless it appears on the face of the complaint that a defendant's conduct was justified, justification is an affirmative defense." *Freed v. Manchester Serv., Inc.*, 165 Cal. App. 2d 186, 190, 331 P.2d 689, 691 (1958). "Whether or not [defendants] were privileged to cause the corporation to discontinue its relations with plaintiffs . . . is a matter of defense, to be decided by a resolution of the factual issues presumptively involved. Their right, if any, to such privilege, does not affirmatively appear on the face of the complaint." *Id.* (quoting *Collins v. Vickter Manor, Inc.*, 47 Cal. 2d 875,

---

4. "[T]he allegations necessary in order for the complaint to withstand a general demurrer [are:] the existence of a valid contract; that the defendant had knowledge of the existence of the contract and intended to induce a breach thereof; that the contract was in fact breached resulting in injury to plaintiff; and the breach and resulting injury must have been proximately caused by defendant's unjustified or wrongful conduct." *Freed v. Manchester Serv., Inc.*, 165 Cal. App. 2d 186, 189, 331 P.2d 689, 691 (1958) (citations omitted).

883, 306 P.2d 783, 788 (1957) ). In the context of tortious interference with contract, the proper place in the pleadings for allegations of qualified privilege is in defendant's answer, as it is when a plaintiff alleges slander. When a complaint alleging slander "falls short of describing an occasion of qualified privilege," and when privilege applies at all, "the facts upon which it may be predicated must be specifically pleaded by way of affirmative defense in defendant's answer." *Presnell v. Pell*, 298 N.C. 715, 720, 260 S.E.2d 611, 614. Therefore, insofar as questions regarding the scope of defendants' privilege are evoked by the allegation that defendants acted "without justification," plaintiff's complaint need not address such questions in order to withstand a motion to dismiss for failure to state a claim.

Third, notice pleading and its corollary, the liberal construction of complaints, supports our view that plaintiff adequately stated the claim's fourth element. "Under the notice theory of pleading, a statement of a claim is adequate if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand its nature and basis and to file a responsive pleading." *Pyco Supply Co., Inc. v. American Centennial Ins. Co.*, 321 N.C. 435, 442, 364 S.E.2d 380, 384 (1988). The complaint must allege the *substantive* elements of a legally recognized claim and give sufficient notice of the events that produced the claim to enable the adverse party to prepare for trial. *Peoples Security Life Ins. Co. v. Hicks*, 322 N.C. at 218, 367 S.E.2d at 648-49. The rule of liberal construction of complaints "generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery." *Ladd v. Estate of Kellenberger*, 314 N.C. at 481, 334 S.E.2d at 755 (quoting *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970) ).

A complaint alleging corporate insiders tortiously interfered with plaintiff's contract with their corporation does not thereby disclose an insurmountable bar to recovery, for the insiders' privilege is qualified, not absolute. Because privilege is qualified, presumption of privilege does not nullify the element that defendants allegedly acted without justification, as the trial court apparently assumed. In order to state that element, the plaintiff must allege facts demonstrating that defendants' actions were not prompted by "legitimate business purposes."

We hold it was sufficient, under the liberal concept of notice pleading, for plaintiff to allege the existence of a valid contract between itself and Rafcor entitling plaintiff to payment from the construction loan fund, that defendants Tedesco and Occhino knew of this contract and intentionally induced Rafcor not to perform "in their own interest to avoid further liability to UCB under their [personal] guarantees," and that in so doing they acted without justification to plaintiff's detriment. These allegations give sufficient notice of the events on which the claim is based to enable defendants to respond and prepare for trial and are "sufficient to satisfy the substantive elements of the claim" of tortious interference with contract. *Privette v. University of North Carolina*, 96 N.C. App. 124, 138, 385 S.E.2d 185, 193 (1989); *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C. App. 447, 448, 368 S.E.2d 892, 893, *disc. rev. denied and appeal dismissed*, 323 N.C. 366, 373 S.E.2d 547 (1988).

We further hold the Court of Appeals properly reversed orders of the superior court dismissing plaintiff's complaint against defendants UCB and Tedesco and Occhino. The decision of the Court of Appeals is accordingly

Modified and affirmed.