VanFleet v. City of Hickory, 2020 NCBC 25.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 2798

SUSAN J. VANFLEET; and
VANFLEET AVIATION, LLC,

        Plaintiffs,

v.

CITY OF HICKORY; TERRY
CLARK; DAVID CLARK; and
WARREN WOOD,

        Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS
AND MOTION TO STRIKE**

1.    For many years, Susan VanFleet and VanFleet Aviation, LLC (together, "VanFleet") leased hangar space at the Hickory Regional Airport. In 2019, the City of Hickory ("the City") notified VanFleet that it would not renew her leases. VanFleet now alleges that she has long been a target of harassment by city and airport officials. She has sued the City, its city manager, and the airport manager and assistant manager (together, "Defendants") for damages and reinstatement of the leases.

2.    Before the Court are Defendants' motions to dismiss and to strike under Rules 12(b)(6) and 12(f) of the North Carolina Rules of Civil Procedure. (*See* ECF Nos. 25, 27.) For the following reasons, the Court **GRANTS** the motion to dismiss in part and **DENIES** it in part. The Court **DENIES** the motion to strike.

> *Law Offices of Christopher A. Hudson, by Christopher A. Hudson, John Adams Hodge & Associates, LLC, by John A. Hodge, and SFS Law Group, by Dennis O'Dea, for Plaintiffs Susan VanFleet and VanFleet Aviation, LLC.*
>
> *Young, Morphis, Bach & Taylor, LLP, by Paul E. Culpepper and Timothy D. Swanson, for Defendants the City of Hickory, Terry Clark, David Clark, and Warren Wood.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the amended complaint are true.

4. Susan VanFleet is a certified flight instructor. (*See* Am. Compl. ¶ 2, ECF No. 20.) Through VanFleet Aviation, she has operated a flight school for the better part of two decades. (*See* Am. Compl. ¶¶ 1, 2.)

5. Beginning in 2013, VanFleet based her aircraft at the Hickory Regional Airport, subject to two lease agreements with the City. (*See* Am. Compl. ¶¶ 3, 7; Pls.' Br. in Opp'n Mot. to Dismiss & Mot. to Strike ["Opp'n"] Jt. Ex. A, ECF No. 32 ["Lease"].) The agreements, each for a different hangar, are identical. In return for a "hangar or tie down rent" of $250 per month, VanFleet received assigned hangar space and a promise that "[c]ity employees will move aircraft into and out of [the] hangar." (Lease at 1, 2.) VanFleet also agreed to comply with governing ordinances and the airport's policies and procedures. (Lease at 2.) These "terms" were to "continue on a month-to-month basis." (Lease at 1; *see also* Am. Compl. ¶ 7 ("These Agreements were for month-to-month terms . . . .").)

6. From the start, VanFleet seems to have gotten crosswise with airport officials. She alleges that they treated her differently than other airport patrons: failing to service her aircraft; leaving the aircraft in unsafe conditions; denying admission to her mechanics; preventing her students from accessing the aircraft; and

refusing access to parking areas used by others. (*See* Am. Compl. ¶¶ 24, 28(d).) VanFleet views these "dirty tricks" as "retaliation" due to her public advocacy for improvements to airport facilities and services. (Am. Compl. ¶¶ 12, 24.)

7. This alleged "campaign of harassment" peaked in early 2019. (Am. Compl. ¶ 12.) In March, the city manager publicly insinuated that VanFleet intended to leave the airport—a false statement that led some of her students to cancel their flight training. (*See* Am. Compl. ¶¶ 28(b), 28(d)(5)–(7), 46, 47.) Then, on May 8, the airport's manager informed VanFleet that her lease agreements would not be renewed. (*See* Am. Compl. Ex. 2.) The notice letter stated that VanFleet had refused to heed requests from airport staff to move her aircraft out of a "non-movement area of the airport" and "back to the tie down area adjacent to" the hangar, thereby violating her obligation to comply with airport policies and procedures. (Am. Compl. Ex. 2 at 1.) According to VanFleet, the charge was trumped up: the airport allowed everyone but her to use the purported non-movement area, and she couldn't have violated any policies or procedures because the airport doesn't have any. (*See* Am. Compl. ¶¶ 12, 13.)

8. VanFleet filed this suit against the City shortly after. (*See* Compl., ECF No. 3.) She moved to enjoin the City from taking steps to evict her. After expedited briefing and a hearing, the Court denied that request because VanFleet had not shown a likelihood of success on her claim that the City breached the lease agreements by terminating them. Governing statutes and case law allow a lessor to terminate a month-to-month tenancy without causation on notice of seven days,

which the City had given. (*See* Order on Mot. for TRO and Inj. ¶ 4, ECF No. 11.) Free to act, the City moved forward with the lease termination.

9. An amended complaint followed. VanFleet now alleges that, without a place to base her aircraft, she has been forced to shut down her flight school. (*See* Am. Compl. ¶¶ 16, 17.) She accuses the city manager, the airport's manager, and an assistant airport manager of conspiring to destroy her business and has added them as defendants, along with the City. (*See* Am. Compl. ¶¶ 8, 9, 10, 37, 40.) It appears that the six enumerated causes of action within the amended complaint represent at least eight distinct claims for relief: breach of contract, declaratory judgment, tortious interference with contractual relationships, negligence, unfair competition, unfair or deceptive trade practices, civil conspiracy, and libel.

10. Defendants move to dismiss all claims except libel and to strike several allegations from the amended complaint. (*See* Defs.' Mot. to Dismiss Am. Compl., ECF No. 25; Defs.' Mot. to Strike, ECF No. 27.) The motions have been fully briefed, and on November 21, 2019, the Court held a hearing at which all parties were represented by counsel. The motions are ripe for determination.

## II.
## MOTION TO STRIKE

11. The Court begins with the motion to strike. Under Rule 12(f), trial courts "may order stricken from any pleading any . . . redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. R. Civ. P. 12(f). "Matter should not be stricken unless it has no possible bearing upon the litigation. If there is any question

as to whether an issue may arise, the motion should be denied." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108 (1978).

12. At issue are six paragraphs in the amended complaint. (*See* Defs.' Mot. to Strike at 1; *see also* Am. Compl. ¶¶ 5, 6, 8, 14, 21(a)–(b), 22.) In short, these six paragraphs allege that the Hickory Regional Airport is a public use airport, that it receives federal funding, and that federal law imposes obligations in connection with the funds. Defendants read these allegations as a misguided attempt by VanFleet to treat conditions on federal funding—for example, that the airport may not treat similarly situated commercial operators differently, (*see* Am. Compl. ¶ 5)—as implied terms of her lease agreements. They seek to strike the allegations on the ground that the Federal Aviation Administration has exclusive jurisdiction to decide whether the City complied with these conditions. (*See* Defs.' Br. in Supp. Mot. to Strike 3, 7, ECF No. 28.)

13. Defendants' concerns are overstated. VanFleet has stressed, in her amended complaint and her brief, that she does not seek relief under federal aviation law and that these allegations are "background information" only. (*See* Am. Compl. ¶ 6; Opp'n 4–6.) The public character of the airport, including its receipt of federal funds, may well have some bearing on the case apart from serving as a basis for liability. Even if not, it is not necessary to strike "[m]ere scenery and stage decoration" from pleadings. *Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 479, 157 S.E.2d 131, 137 (1967). And there is no risk of prejudice to Defendants. If VanFleet reverses course and asks the Court to decide whether the City violated

conditions associated with the receipt of federal funds, Defendants may raise their jurisdictional objection at that time.

14. In its discretion, the Court denies the motion to strike. *See, e.g.*, *Reese v. City of Charlotte*, 196 N.C. App. 557, 567, 676 S.E.2d 493, 499 (2009) (affirming denial of motion to strike); *Womack Newspapers, Inc. v. Town of Kitty Hawk*, 181 N.C. App. 1, 15–16, 639 S.E.2d 96, 105–06 (2007) (same); *Buckley LLP v. Series 1 of Oxford Ins. Co. NC LLC*, 2020 NCBC LEXIS 36, at *8–9 (N.C. Super. Ct. Mar. 23, 2020) (denying motion to strike).

## III.
## MOTION TO DISMISS

15. In deciding Defendants' motion to dismiss, the Court applies familiar standards, taking the allegations of the amended complaint as true and viewing the facts and permissible inferences "in the light most favorable to" VanFleet. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). Of course, "the court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). And it is appropriate to look to any contracts—here, the lease agreements—that are the subject of the amended complaint. *See id.* at 60–61, 554 S.E.2d at 847.

16. Two observations will help frame the analysis. First, the amended complaint is not a model of clarity. As an example, VanFleet's first cause of action includes three distinct claims for relief with no clear indication as to which of the many paragraphs or subparagraphs are relevant to each. (*See* Am. Compl. ¶¶ 18–

28.) The Court has aimed to understand the amended complaint and to construe it liberally without expanding VanFleet's claims beyond what is fairly alleged. *See Brown v. Secor*, 2017 NCBC LEXIS 65, at *19 (N.C. Super. Ct. July 28, 2017) ("The requirement to liberally construe the complaint is not an invitation to rewrite it.").

17. Second, VanFleet's response brief frequently relies on material outside the amended complaint. (*See, e.g.*, Opp'n 14, 18–20.) Extrinsic material is not relevant under Rule 12(b)(6), and the Court therefore does not consider it. *See Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775, 796 S.E.2d 120, 123 (2017).

## A. Breach of Contract

18. VanFleet claims that the City breached the lease agreements by terminating them without cause. (*See* Am. Compl. ¶ 23.) As Defendants correctly observe, though, "[a] showing of causation is unnecessary to effectively terminate a month-to-month tenancy." *E. Town Mkt., L.P. v. 550 Foods, LLC*, 2015 N.C. App. LEXIS 619, at *16 (N.C. Ct. App. July 21, 2015) (unpublished). By statute, a monthly tenancy may be terminated by a notice to quit given seven days or more before the end of the current month of the tenancy. *See* N.C.G.S. § 42-14; *Havelock Yacht Club, Inc. v. Crystal Lake Yacht Club, Inc.*, 215 N.C. App. 153, 155, 714 S.E.2d 788, 789 (2011). Here, VanFleet alleges that the two agreements are month-to-month leases and that the City gave timely written notice of its intent to terminate them. (*See* Am. Compl. ¶¶ 7, 9, 21; Am. Compl. Ex. 2.) Taken as true, these allegations fail to state a claim for breach of contract.

19.     In her brief, VanFleet argues that the agreements are not in fact month-to-month leases.  (*See* Opp'n 9–10.)  This argument is contrary to the allegation in the amended complaint that the "lease agreements . . . were for month-to-month terms . . . ."  (Am. Compl. ¶ 7; *see also* Am. Compl. ¶ 21.)  It also conflicts with the plain language of the agreements, which state that their terms "shall continue on a month-to-month basis."  (Lease at 1.)  VanFleet is bound by her pleading and by the plain language of the agreements.  *See Rollins v. Junior Miller Roofing Co.*, 55 N.C. App. 158, 161–62, 284 S.E.2d 697, 700 (1981) ("A party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader." (citation and quotation marks omitted)); *Mount Airy-Surry Cty. Airport Auth. v. Angel*, 833 S.E.2d 409, 412–13 (N.C. Ct. App. 2019) (treating hangar lease on "month-to-month basis" as monthly leasehold).

20.     Also in her brief, VanFleet introduces a new allegation that Defendants breached the implied covenant of quiet enjoyment.  (*See* Opp'n 12.)  No such claim appears in the amended complaint, and the Court therefore does not consider the argument.  *See McGuire v. LORD Corp.*, 2020 NCBC LEXIS 15, at *8 n.4 (N.C. Super. Ct. Feb. 11, 2020); *Coleman v. Coleman*, 2015 NCBC LEXIS 114, at *7–9 (N.C. Super. Ct. Dec. 10, 2015).

21.     The Court grants the motion to dismiss the claim for breach of contract.

## B. Declaratory Judgment

22. Though lacking clarity and precision, the claim for declaratory judgment appears to request a declaration that the City breached the lease agreements and that VanFleet did not. (*See* Am. Compl. ¶¶ 19–21.) These requests simply duplicate the claim for breach of contract, which has been dismissed. Thus, there is no genuine controversy, and the requested declaration would not serve a "useful purpose in clarifying and settling" the parties' legal relations. *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 554, 680 S.E.2d 738, 743 (2009) (citation and quotation marks omitted); *see also Carpenter v. Cty. Sch. Bd.*, 107 Fed. App'x 351, 352 (4th Cir. 2004) (per curiam) (unpublished) (affirming dismissal of duplicative declaratory-judgment claim).

23. VanFleet argues that she is also entitled to declarations that Defendants committed unfair or deceptive trade practices, interfered with her contractual relations, made libelous statements, and conspired together to do so. (*See* Opp'n 6–7.) These requested declarations—also duplicative of the other asserted claims—do not appear in the amended complaint. Thus, the Court does not consider them. *See, e.g., McGuire*, 2020 NCBC LEXIS 15, at *8 n.4; *Coleman*, 2015 NCBC LEXIS 114, at *7–9.

24. The Court grants the motion to dismiss the claim for declaratory judgment.

## C. Tortious Interference with Contract

25. To state a claim for tortious interference with contract, VanFleet must allege that (1) she had a valid contract with a third party; (2) Defendants knew of the

contract; (3) Defendants intentionally induced the third party not to perform the contract; (4) and in doing so acted without justification; (5) resulting in actual damage to VanFleet. *See Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992). Defendants argue that the amended complaint fails to allege all but the last element. (*See* Defs.' Br. in Supp. Mot. to Dismiss 10–12, ECF No. 26 ["Br. in Supp."].)

26. After careful review, the Court concludes that VanFleet has adequately pleaded this claim. The amended complaint names three students who canceled flight training "due to harassment by" Defendants. (Am. Compl. ¶ 28(c).) As alleged, "these existing customers" and their "contractual relationships" were "known-to-Defendants." (Am. Compl. ¶ 28(a).) Hoping to "damage [VanFleet's] reputation," Defendants interfered with the students' "routine access" to VanFleet's aircraft, prompting them to leave the flight school. (Am. Compl. ¶¶ 28(a), (c), (d)(5)–(7).) Construed liberally, these allegations are sufficient to plead unjustified interference with known contracts between VanFleet and her students. *See Sandhills Home Care, L.L.C v. Companion Home Care – Unimed, Inc.*, 2016 NCBC LEXIS 61, at *42–44 (N.C. Super. Ct. Aug. 1, 2016) (denying motion to dismiss where plaintiff "allege[d] that [d]efendants interfered with 'valid contracts and business relationship[s] . . . .' "); *see also Hopkins v. MWR Mgmt. Co.*, 2017 NCBC LEXIS 47, at *53–54 (N.C. Super. Ct. May 31, 2017) (concluding that knowledge of business relationship may suffice to show knowledge of contract with third party).

27.   The Court therefore denies the motion to dismiss the claim for tortious interference with contract.

## D. Negligence

28.   Defendants argue that VanFleet's "negligence claim does nothing more than recast the allegations put forth in support of [the] breach of contract claim" and is therefore barred by the economic loss rule.  (Br. in Supp. 17.)  VanFleet does not address this claim in the opposition brief.

29.   "The economic loss rule, as it has developed in North Carolina, generally bars recovery in tort for damages arising out of a breach of contract . . . ."  *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 159, 796 S.E.2d 827, 830 (2017).  This is true even when the alleged breach is "due to the negligent or intentional conduct" of one of the contracting parties.  *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741 (1992).  "To state a viable claim in tort for conduct that is also alleged to be a breach of contract, a plaintiff must allege a duty owed to him by the defendant separate and distinct from any duty owed under a contract."  *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *48 (N.C. Super. Ct. Nov. 3, 2011) (citation and quotation marks omitted).

30.   Without question, VanFleet's negligence claim overlaps with the claim for breach of contract.  The amended complaint alleges that "the City has terminated the Agreements improperly through unreasonable, intentional and negligent acts . . . ." (Am. Compl. ¶ 42.)  This is the contract claim merely restated as a tort.  No duty other

than the contractual duty is alleged. Thus, the termination of the lease agreements cannot support a claim for negligence.

31. This does not mean that the negligence claim must be dismissed. At the hearing, VanFleet's counsel argued that the amended complaint alleges negligence in the handling of her aircraft by airport personnel, separate from the contract claim. It would have been far better had counsel briefed this argument rather than leaving it to the hearing. Nevertheless, on a charitable reading, the negligence claim "reiterate[s] each of the allegations" that come before it, (Am. Compl. ¶ 39), including allegations that airport personnel failed to service VanFleet's aircraft, did not preheat the aircraft in freezing weather, and left the aircraft in unsafe and dangerous conditions, (Am. Compl. ¶¶ 28(d)(1)–(2)). Defendants' motion does not appear to address this aspect of the negligence claim.

32. Accordingly, the Court denies the motion to dismiss the claim for negligence to the extent it is based on mishandling of VanFleet's aircraft.

### E. Unfair Competition

33. VanFleet asserts a claim for unfair competition based on the allegation that Defendants are "allowing the other operators at the Airport to unfairly compete with the Plaintiffs." (Am. Compl. ¶ 35.) But "common law unfair competition claims are limited to claims between business competitors . . . ." *Gateway Mgmt. Servs. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *18 (N.C. Super. Ct. May 9, 2018). The amended complaint does not allege that Defendants compete with

VanFleet. Absent such an allegation, the claim for unfair competition must be dismissed.

### F. Unfair or Deceptive Trade Practices

34. As best the Court can tell, the claim for unfair or deceptive trade practices is derivative of the claims for breach of contract and tortious interference with contract. Defendants seek to dismiss the claim to the extent it is based on an alleged breach of contract. The Court agrees that the claim for breach of contract, which has been dismissed, cannot support a claim for unfair or deceptive trade practices.

35. But Defendants have not sought dismissal on any other basis. The claim for tortious interference with contract remains live. The Court therefore denies the motion to dismiss the claim for unfair or deceptive trade practices to the extent based on those allegations. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988) (noting that tortious interference with contract may support a claim for unfair or deceptive trade practices).

### G. Civil Conspiracy

36. Defendants argue that the claim for civil conspiracy runs afoul of the intracorporate immunity doctrine. (*See* Br. in Supp. 15–16.) This doctrine holds that "there can be no conspiracy" between a corporation and its agents. *Chrysler Credit Corp. v. Rebhan*, 66 N.C. App. 255, 259, 311 S.E.2d 606, 609 (1984); *see also Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 784–85 (M.D.N.C. 2011) (applying doctrine to municipality). As alleged, the individual defendants are agents and employees of the City, and their conduct is "imputable" or "attributable to" the City. (Am. Compl.

¶¶ 8, 15, 16, 40, 46, 47.)  Taken as true, these allegations require dismissal of the conspiracy claim.  *See, e.g.*, *Chrysler Credit*, 66 N.C. App. at 259, 311 S.E.2d at 609 (affirming Rule 12(b)(6) dismissal of conspiracy claim where claim expressly alleged agency relationship); *Lendingtree, LLC v. Intercontinental Capital Grp., Inc.*, 2017 NCBC LEXIS 54, at *15–16 (N.C. Super. Ct. June 23, 2017) (dismissing conspiracy claim based on intracorporate immunity).

37.  In her brief, VanFleet does not address intracorporate immunity or cite any allegations that might support the conspiracy claim.  (*See* Opp'n 20.)  After careful review, the Court notes that the amended complaint asserts, with no supporting factual allegations, that the individual defendants "acted entirely outside the legitimate course and scope of their official duties with the City." (Am. Compl. ¶ 25.) The allegation is conclusory, contradicted by other allegations, and therefore insufficient to save the claim.  *See, e.g.*, *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 207–09, 794 S.E.2d 898, 903–05 (2016) (affirming grant of motion to dismiss and "disregard[ing] conclusory allegations that state legal conclusions or unwarranted inferences of fact").

38.  The Court grants the motion to dismiss the conspiracy claim.

IV.
CONCLUSION

39.  For these reasons, the Court **ORDERS** as follows:

a.  The Court **GRANTS** the motion to dismiss the claims for breach of contract, declaratory judgment, unfair competition, and civil conspiracy.

b.     The Court **DENIES** the motion to dismiss the claims for tortious interference with contract, negligence, and unfair or deceptive trade practices.

c.     The Court **DENIES** the motion to strike.

**SO ORDERED**, this the 30th day of March, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases