Gupta v. Eli Glob., LLC, 2019 NCBC 39.

STATE OF NORTH CAROLINA
COUNTY OF WAKE

AJAY GUPTA,

        Plaintiff,

    v.

ELI GLOBAL, LLC; ELI RESEARCH,
INC.; AMERICAN ACADEMY
HOLDINGS, LLC; MEDFLOW
HOLDINGS, LLC; MDOFFICE
HOLDINGS, LLC; IO
PRACTICEWARE, INC; PENN
MEDICAL INFORMATICS SYSTEMS,
LLC; MPLUS HOLDINGS, LLC;
GREG LINDBERG, Individually;
DUNHILL HOLDINGS, LLC; and
STANDARD FINANCIAL LIMITED,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 500057

ORDER & OPINION ON
MOTION TO DISMISS

1.      THIS MATTER is before the Court on Defendants Eli Global, LLC; Eli Research, Inc.; American Academy Holdings, LLC; Medflow Holdings, LLC; MDoffice Holdings, LLC; IO Practiceware, Inc.; Penn Medical Informatics Systems, LLC; MPlus Holdings, LLC; and Greg Lindberg's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) and Rule 9(b) ("the Motion"). Having considered the pleadings, the Motion, and the parties' briefs, and having heard oral argument, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

*The Noble Law Firm, PLLC by Laura L. Noble and Nicholas J. Sanservino, Jr., for Plaintiff.*

*Condon Tobin Sladek Thornton, PLLC by Kendal B. Reed and Aaron Z. Tobin, and Fox Rothschild, LLP by Matthew N. Leerberg and Troy D. Shelton, for Defendants Greg Lindberg; Eli Global, LLC; Eli Research,*

*Inc.; American Academy Holdings, LLC; Medflow Holdings, LLC; MDoffice Holdings, LLC; IO Practiceware, Inc.; Penn Medical Informatics Systems, LLC; and MPlus Holdings, LLC.*

*Dunhill Holdings, LLC and Standard Financial Limited, Defendants for which no counsel has appeared.*

Gale, Judge.

## I. STATEMENT OF FACTS

2.     The Court does not make findings of fact when evaluating a motion to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). The following fact statement is based on the factual allegations of the Amended Complaint which are accepted as true solely for purposes of ruling on the Motion.

3.     Plaintiff Ajay Gupta ("Gupta") is a citizen and resident of India and a former employee of one or more of the Defendants.  (Am. Compl. ¶¶ 1, 30, ECF  No. 38.)

4.     Defendant Greg Lindberg ("Lindberg") is a North Carolina citizen, resident, and businessman who manages several global businesses under the umbrella of Defendant Eli Global, LLC, a North Carolina corporation ("Eli Global"). (Am. Compl. ¶¶ 2, 5–6.)

5.     Plaintiff alleges that Defendants Eli Research, Inc., (Am. Compl. ¶ 10); American Academy Holdings, LLC, (Am. Compl.  ¶ 12); Medflow Holdings, LLC, (Am. Compl. ¶ 13); IO Practiceware, Inc., (Am. Compl. ¶ 14); Penn Medical Informatics System, LLC, (Am. Compl. ¶ 15); MPlus Holdings, LLC d/b/a MRX Holdings, LLC, (Am. Compl. ¶ 16); MDoffice Holdings, LLC, (Am. Compl. ¶ 17); Dunhill Holdings, LLC, (Am. Compl. ¶ 19); and Standard Financial Limited, (Am. Compl. ¶ 18), operate

under Eli Global's umbrella. Defendants Dunhill Holdings and Standard Financial were first named in the Amended Complaint, but service appears not to have been made upon them so that they have not appeared and they do not join in the Motion.

6. Gupta alleges that Lindberg organized the various corporations to obfuscate improper conduct rather than for legitimate corporate purposes, and that Lindberg has admitted this. (Am. Compl. ¶¶ 102, 179–85.) In addition to his own allegations, Gupta references similar allegations by Lindberg's wife in her litigation with Lindberg. (Am. Compl. ¶ 21.)

7. In 2007, Lindberg recruited Gupta to develop operations for Eli Global in India, to be known as Eli India. (Am. Compl. ¶ 36.) Prior to that time, Gupta had found success as a mechanical engineer, as a founding member of the India arm of the Fortune 500 company Agilent, and in earning degrees in business finance as well as an MBA degree in marketing. (Am. Compl. ¶ 35.)

8. Gupta alleges that Lindberg made certain representations to induce Gupta to join Lindberg's enterprise, including:

  a. Lindberg and Eli Global would initially provide Gupta with modest compensation, but if Gupta expanded the business he would receive substantial rewards represented by stock appreciation rights ("SARS") agreements, (Am. Compl. ¶ 38);

  b. Lindberg personally guaranteed that the corporations would fully honor any agreements executed with Gupta, (Am. Compl. ¶ 38);

c. Lindberg would never transfer funds or restructure his companies in a way that could deprive Gupta of any monies earned, (Am. Compl. ¶ 38); and

d. Lindberg would not interfere with Gupta's management of the India operations, (Am. Compl. ¶ 38).

9. Gupta alleges Lindberg knew these representations to be false when he made them and that Lindberg had no intention to fulfill them. (Am. Compl. ¶ 39.)

10. Gupta confirmed his acceptance of employment with Eli Research on terms set out in a letter dated March 18, 2007, signed by Lindberg (the "Offer Letter"). (Am. Compl. Ex. A, Offer Letter, ECF No. 38.1.)

11. The Offer Letter provided that Gupta would receive "SARS in Eli Research, Inc., entitling [Gupta] to the right to receive the appreciation on approximately ¼ of 1% of total company stock. [Gupta] may be eligible for additional stock appreciation rights as [his] responsibilities and our activities in India grow." (Am. Compl. ¶ 43.)

12. The Offer Letter also refers to a "Noncompetition, Confidentiality and Non-Solicitation Agreement." The record contains no such agreement and Gupta avers he was never provided with it. (Am. Compl. ¶¶ 46, 96.)

13. Gupta avers that over ten years he successfully grew Eli Global's presence in India to 3,000 employees in seven cities, (Am. Compl. ¶ 49), resulting in significant profits for Eli Global, (Am. Compl. ¶¶ 51–57), and Gupta being given increasing responsibility within the company, (Am. Compl. ¶ 50).

14.     During his ten-year employment, Gupta executed SARS agreements with Eli Research, Inc. in December 2007; American Academy Holdings, LLC in June 2013; Medlow Holdings, LLC and IO Practiceware, Inc. in February 2015; Penn Medical Informatics Systems, LLC, MPlus Holdings, LLC, and MDoffice Holdings, LLC in August 2015; and entered an Equity Based Bonus Agreement with Eli Research, Inc. in January 2011 (collectively, "SARS and Bonus Agreements").   (Am. Compl. ¶ 62.)

15.     The SARS and Bonus Agreements each provide that Gupta would receive the promised amounts unless he was dismissed "for cause" or because he violated "any Company confidentiality or noncompetition agreement to which the Recipient is a party . . . ."

16.     The definitions of "cause" varied in the SARS and Bonus Agreements but shared common elements.  Some, but not all, provided that "cause" was to be "reasonably determined" by the Company, which determination would then be binding on Gupta.  One agreement defined "cause" as:

> . . . (i) conviction or the pleading of nolo contendere to any crime which could reasonably impair the business or reputation of the Company, (ii) any crime or act involving moral turpitude, or (iii) an act involving the Company which would amount to a felony or a misdemeanor, whether or not such act is reported or the Recipient is convicted of such act.

(Am. Compl. Ex. B, at SARS Agreement Eli Research, Inc., December 2007 § 5.4(b), ECF No. 38.2.)  Other agreements defined "cause" as:

> . . . willful misconduct . . . or willful failure by the Recipient to perform the Recipient's responsibilities to the Company and/or any affiliate of the Company (including, without limitation, breach by the Participant of any provision of any employment, consulting, advisory, nondisclosure,

noncompetition or other similar agreement between the Recipient and the Company and/or any affiliate of the Company), as reasonably determined by the Company, which determination shall be conclusive.

(Am. Compl. Ex. B, at Equity Based Bonus Agreement Eli Research, Inc., January 2011 § 3(b)(i), ECF No. 38.2; Am. Compl. Ex. B, at SARS Agreement Medflow Holdings, LLC, February 2015 § 3(b)(i), ECF No. 38.2; Am. Compl. Ex. B, at SARS Agreement IO Practiceware, Inc., February 2015 § 3(b)(i), ECF No. 38.2; Am. Compl. Ex. B, at SARS Agreement MPlus Holdings, LLC, August 2015 § 3(b)(i), ECF No. 38.2; Am. Compl. Ex. B, at SARS Agreement MDoffice Holdings, LLC, August 2015 § 3(b)(i), ECF No. 38.2; Am. Compl. Ex. B, at SARS Agreement Penn Medical, August 2015 § 3(b)(i), ECF No. 38.2.)  Still another agreement defined "cause" as:

> . . . willful misconduct . . . or willful failure by the Recipient to perform the Recipient's responsibilities to the Company and/or any affiliate of the Company including any business affiliated with the Eli Global group of companies or affiliated with Greg E. Lindberg (including, without limitation, breach by the Participant of any provision of any employment, consulting, advisory, nondisclosure, noncompetition or other similar agreement between the Recipient and the Company and/or any affiliate of the Company), as reasonably determined by the Company, which determination shall be conclusive.

(Am. Compl. Ex. B, at SARS Agreement American Academy Holdings, LLC, June 2013 § 3(b)(i), ECF No. 38.2.)

17.     As to confidentiality and noncompetition restrictions, the initial SARS agreement between Gupta and Eli Research, Inc. provides that:

> Notwithstanding any other provision of this Agreement to the contrary, the Recipient shall forfeit his vested and nonvested Incentive Units and all rights to any payments hereunder (including but not limited to rights to payments with respect to previously exercised Incentive Units), and the Company shall have no further obligation hereunder to the Recipient, in the event of the Recipient's breach of any Company

confidentiality or noncompetition agreement to which the Recipient is a party, or in the event of the Recipient's breach of any shareholders', stock purchase, buy-sell or similar agreement between the Recipient and the Company or any Company shareholder.

(Am. Compl. Ex. B, SARS Agreement Eli Research, Inc., December 2007 § 7.) The other SARS and Bonus Agreements included a somewhat different provision regarding confidentiality and noncompetition restrictions, which reads:

Notwithstanding any other provision of this Agreement to the contrary, the Recipient shall forfeit all rights to any payments hereunder, and the Company shall have no further obligation hereunder to the Recipient, in the event of the Recipient's breach of any Company confidentiality or noncompetition agreement to which the Recipient is a party, or in the event of the Recipient's breach of any shareholders', stock purchase, buy-sell or similar agreement between the Recipient and the Company or any Company shareholder. The provisions of this paragraph 6 will similarly apply to any such agreement between the Recipient and an affiliate of the Company.

(Am. Compl. Ex. B, at Equity Based Bonus Agreement Eli Research, Inc., January 2011 § 6; Am. Compl. Ex. B, at SARS Agreement Medflow Holdings, LLC, February 2015 § 6; Am. Compl. Ex. B, at SARS Agreement IO Practiceware, Inc., February 2015 § 6; Am. Compl. Ex. B, at SARS Agreement MPlus Holdings, LLC, August 2015 § 6; Am. Compl. Ex. B at SARS Agreement MDoffice Holdings, LLC, August 2015 § 6; Am. Compl. Ex. B, at SARS Agreement Penn Medical, August 2015 § 6; Am. Compl. Ex. B, at SARS Agreement American Academy Holdings, LLC, June 2013 § 6.)

18. Gupta avers that during the course of his employment both he and other Eli India employees received payments from a number of Eli Global's entities, including at least Dunhill and Standard Financial. (Am. Compl. ¶ 59.)

19. Gupta recounts an e-mail from Lindberg that demonstrates the alleged difficulty of determining how Gupta should have been paid. It states:

> the simple solution for keeping [your] bonuses confidential . . . is for me to pay them all through Dunhill – easier than setting up a new co. [*sic*] So going forward, I will do this . . . Dunhill will then charge AAI parent co [*sic*] a management fee for all business-related charges . . . there will be no detail on bonuses at that level. Myself, Tisha [Lindberg] and third party accountants will be the only ones with access to bonus info.

(Am. Compl. ¶ 60) (emphasis omitted).

20. Gupta's bonuses began to vest in January 2017. (Am. Compl. ¶ 124.)

21. To date, Gupta has received no payments under any of the SARS and Bonus Agreements. (Am. Compl. ¶¶ 99, 125.)

22. Gupta avers that without prior warning he received a letter in November 2017 stating that he was being dismissed for cause because of multiple breaches of his noncompetition agreement, his SARS agreements, and for his willful misconduct and violations of ethical and fiduciary duties. (Am. Compl. ¶¶ 103, 105; Am. Compl. Ex. C, at Dismissal Letter ("Dismissal Letter"), ECF No. 38.3.) More specifically, the letter said the dismissal was for "operating multiple side-businesses that compete with Eli Global . . . . Operating these competitive entities, directly or indirectly, is a violation of your Employment Agreement . . . ." (Dismissal Letter.) The letter continues by asserting that Gupta registered two of his own companies as being located at Eli India's registered address, contracted with Gupta's companies in his role as an Eli Global employee, and "involve[d] Eli India in under-the-table cash transactions" with Gupta's companies. (Dismissal Letter.)

23. Lindberg simultaneously terminated three senior employees at Eli India. (Am. Compl. ¶ 110.) The record does not document the reasons stated for those terminations.

24. Gupta's termination letter stated that all of the obligations owed to Gupta under the various agreements were now void because the dismissal was for cause. (Am. Compl. Ex. C.)

25. Gupta alleges that he has been deprived of millions of dollars of earned compensation. He calculates the value of his rights under the SARS Agreement with Eli Research, Inc. to be at least $1,500,000, (Am. Compl. ¶ 82); under the Equity Based Bonus Agreement with Eli Research, Inc. to be at least $2,500,000, (Am. Compl. ¶ 92); and under the remaining agreements to total over $1,500,000, (Am. Comp. ¶ 100).

## II. PROCEDURAL HISTORY

26. Gupta filed his initial Complaint on February 15, 2018, asserting claims for breach of contract, (Compl. ¶¶ 63–66, ECF No. 5); violations of the North Carolina Wage & Hour Act, (Compl. ¶¶ 67–74); unfair or deceptive trade practices under Chapter 75 ("UDTP" or "Chapter 75"), (Compl. ¶¶ 75–79); fraudulent or negligent misrepresentation, (Compl. ¶¶ 80–85); unjust enrichment, (Compl. ¶¶ 86–91); tortious interference with contract by Lindberg, (Compl. ¶¶ 95–103); and civil conspiracy among Defendants, (Compl. ¶¶ 104–06). Gupta additionally requested that the Court pierce the veils of the corporate Defendants to reach Lindberg's assets, (Compl. ¶¶ 107–13), and award punitive damages, (Compl. ¶¶ 92–94).

27.     A notice that the case would be conditionally designated as a Mandatory Complex Business Case was filed with the Complaint. (Conditional Notice Designation, ECF No. 6.) The case was designated as a mandatory complex business case on April 2, 2018, (Designation Order, ECF No. 4), and then assigned to the undersigned, (Assignment Order, ECF No. 2).

28.     Moving Defendants timely filed a Rule 12(b)(6) motion to dismiss. (Defs.' Mot. Dismiss, ECF No. 10.) Gupta then moved for leave to amend his Complaint to add Dunhill Holdings and Standard Financial as Defendants. (ECF No. 27.)

29.     On August 29, 2018, the Court held a hearing on the pending motions. The Court determined that Gupta was entitled to amend his Complaint as a matter of right and further ordered that Defendants could incorporate their motion to dismiss as directed against any Amended Complaint, but revise the motion and supplement the supporting memorandum as necessary to address newly added allegations. The Court indicated that it would then rule on the Motion without further hearing.

30.     On September 17, 2018, Plaintiff filed the Amended Complaint, adding Dunhill Holdings and Standard Financial as Defendants and additional claims, including a second breach of contract claim, (Am. Compl. ¶¶ 122–26); a claim for breach of the implied covenant of good-faith and fair dealing, (Am. Compl. ¶¶ 131–36); and a request for a declaratory judgment, (Am. Compl. ¶¶ 118–21).

31. The original Defendants amended their motion to dismiss to address the new claims and factual allegations. (Defs.' Mot. Dismiss Am. Compl., ECF No. 39.)

32. The Motion is ripe for disposition.

### III. STANDARD OF REVIEW

33. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the" disputed pleading, here the Amended Complaint. *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The motion should be granted only when: (1) the pleading "on its face reveals that no law supports" the asserted claim; (2) the pleading "on its face reveals the absence of facts sufficient to make a good claim;" or (3) the pleading "discloses some fact that necessarily defeats" the claim. *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted).

34. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the counterclaims as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

### IV. ANALYSIS

#### A. **Declaratory Judgment**

35. Gupta seeks a declaratory judgment that Defendants breached the SARS and Bonus Agreements. (Am. Compl. ¶ 119.) Defendants attack the

declaratory judgment claim as unnecessary because it does nothing more than recast Gupta's breach of contract claims. (Br. Supp. Mot. Dismiss Am. Compl. ¶¶ 22–25.)

36. A court may, in its discretion, decline to issue declaratory relief when "(1) the requested declaration will serve no useful purpose in clarifying or settling the legal relations at issue; or (2) the requested declaration will not terminate or afford relief from the uncertainty, insecurity, or controversy giving rise to the proceeding." *Augur v. Augur,* 356 N.C. 582, 588–89, 573 S.E.2d 125, 130 (2002). Properly pleading a declaratory judgment claim requires "pleading all facts necessary to disclose the existence of an actual controversy between the parties . . . with regard to their respective rights and duties[.]" *N.C. Consumers Power, Inc. v. Duke Power Co.,* 285 N.C. 434, 447, 206 S.E.2d 178, 187 (1974) (quoting *Lide v. Mears*, 231 N.C. 111, 118, 56 S.E.2d 404, 409 (1949)). A motion to dismiss "is seldom an appropriate pleading in actions for declaratory judgments." *Id.* at 439, 206 S.E.2d 178, 182.

37. As explained below, the Court has determined that Gupta's breach of contract claims should survive the Motion. While the Court may later seek to narrow claims to be decided, in its discretion, the Court will allow the declaratory judgment claim to proceed at this time.

## B. **Breach of Contract**

38. The Amended Complaint asserts two claims alleging a breach of contract. The first claim asserts that the initial December 2007 SARS agreement with Eli Research, Inc. was breached when the payment due in January 2017 was not made. (Am. Compl. ¶¶ 122–26.) The second claim asserts that the December 2007

agreement and all other SARS and Bonus Agreements were breached when Gupta was terminated based on only a pretextual determination of cause for the sole purpose of avoiding paying him amounts to which he was due. (Am. Compl. ¶¶ 127–30.)

39. The elements of a breach of contract claim are the "(1) existence of a valid contract and (2) breach of the terms of that contract." *Cordaro v. Harrington Bank, FSB*, 817 S.E.2d 247, 256 (N.C. Ct. App. 2018) (citation and quotation marks omitted). Gupta has adequately alleged that he entered a valid contract with each of the moving corporate Defendants.

40. Defendants argue, however, that each of those contracts have been terminated, and each contract by its express terms provides that the Company's determination of "cause" is binding on Gupta, so that the Amended Complaint on its face defeats any breach of contract claim. (Defs.' Br. Supp. Mot. Dismiss Compl. ¶ 56, ("Br. Supp. Mot. Dismiss Compl."), ECF No. 11.) Defendants' position would have the Court ignore that the contracts bind Gupta only to a "reasonable determination" of cause and that Gupta clearly alleges that no such reasonable determination could have been made. The Court concludes that Gupta has adequately alleged facts sufficient to allow the breach of contract claims to proceed at least as against the corporate Defendants with which Gupta entered contracts.

41. The Court must view the Motion separately as to Lindberg, because he was not a nominal party to any of the contracts at issue. (Br. Supp. Mot. Dismiss Compl. ¶ 17.) In his brief, Gupta alleges that Lindberg is properly a party to the breach of contract claims because Gupta may prove that Lindberg so dominated the

corporations for his own purposes such that their corporate veil should be pierced, and contractual obligations should be imposed on Lindberg. (Br. Opp'n Defs.' Mot. Dismiss 7, ECF No. 22.)

42. The Court views these assertions against Lindberg as a question of remedies once a breach of contract has been proven rather than a basis to assert an independent claim against Lindberg personally. *See Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013) (noting that piercing the corporate veil is not a theory of liability and holding that a separate claim is required to establish liability). Other claims may continue against Lindberg individually as discussed below, but the breach of contract claims against him should be dismissed, without prejudice to Gupta's ability to later prove that Lindberg should be charged with responsibility for such liability as may be adjudged against the corporate Defendants.

## C. Breach of Implied Covenant of Good-Faith and Fair Dealing

43. Gupta asserts a separate contract claim based on an alleged breach of the implied covenant of good-faith and fair dealing. (Am. Compl. ¶¶ 131–36.)

44. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 385, 781 S.E.2d 889, 894 (2016) (citation and quotation marks omitted). A claim based on the implied covenant requires proving that "the [defendant] took action which injured the right of the other to receive the benefits of the agreement thus depriving the other of the fruits of the bargain."

*McDonald v. Bank of N.Y. Mellon Trust Co.*, 816 S.E.2d 861, 864 (N.C. Ct. App. 2018) (quoting *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.*, 805 S.E.2d 147, 158 (N.C. Ct. App. 2017)) (internal quotations omitted). The claim is often used in an effort to recover under a contract that is otherwise terminable at-will. *See, e.g., Eagle Servs. & Towing, LLC v. Ace Motor Acceptance Corp.*, 801 S.E.2d 179 (N.C. Ct. App. 2017) (affirming a trial court's denial of a Rule 12(b)(6) motion to dismiss a claim of breach of the implied covenant of good faith and fair dealing in a non-employment context). But the implied covenant is not properly used to avoid express contractual terms properly employed. *See Campbell v. Blount*, 24 N.C. App. 368, 371, 210 S.E.2d 513, 515 (1975).

45. Ultimately, it appears that Gupta's contract claims will be governed by the express contract terms and specifically whether those contracts were properly terminated based on a reasonable determination of cause. The Court may later determine that the express contract terms control over any contrary implied duty, but that determination should not be made at this early stage of the litigation.

**D.     Wage & Hour Act**

46. Gupta asserts that he had earned bonus compensation prior to his termination and that he would have continued to be entitled to such additional compensation but for Defendants' pretextual termination for cause. (Am. Compl. ¶¶ 142–44.) Defendants counter that the contracts were terminable at will, so that the Wage and Hour Act affords Gupta no protection. (Br. Supp. Mot. Dismiss Compl. ¶¶ 35–36.) First, Defendants' position assumes that the contracts were, in fact,

terminated in accordance with their terms.  Second, the position would not defeat Gupta's right to recover compensation he had earned prior to his termination. The Wage and Hour Act dictates that "[e]mployees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday[.]" N.C. Gen. Stat. § 95-25.7.

47.     Moving Defendants further contend that any Wage and Hour Act claim must be limited to Eli Research with which Gupta entered an employment contract. However, that contracts at issue contemplate that Gupta would be paid by other corporations for his employment services.  The Wage and Hour Act defines an "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 95-25.2(5).  Courts liberally construe the term "employer" and employ the "economic reality" test, which considers factors including whether the person had the power to hire and fire, whether the person supervised and controlled employee schedules, whether the person determined the rate and method of payment, and whether the person maintained employment records.  *Powell v. P2Enters., LLC*, 247 N.C. App. 731, 735, 786 S.E.2d 798, 801 (2016).

48.     The Court concludes that Gupta's Wage and Hour Act claims should survive against each moving Defendant, including Lindberg, who Gupta alleges was directly involved both in Gupta's hiring and firing. *See Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 721  (E.D.N.C. 2009) (holding executive officer can be

deemed an "employer" if that executive officer controls significant functions of the business, including hiring and salary decisions).

### E. Unfair or Deceptive Trade Practices

49. Gupta seeks to present a UDTP claim in addition to his contract claims, alleging that the breaches of which he complains were accompanied by aggravated circumstances. (Am. Compl. ¶ 148.) It is now well understood that a breach of contract does not support a UDTP claim if not accompanied by such circumstances. *See Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367–68, 533 S.E.2d 827, 832–33 (2000). However, notwithstanding this issue, the fatal defect in Gupta's UDTP claim is instead that the Amended Complaint affords no basis to find that the acts of which he complains were "in or affecting commerce" as required in Chapter 75. N.C. Gen. Stat. § 75-1.1.

50. The basic elements of a UDTP claim include that "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) that plaintiff was injured thereby." *Strickland v. Lawrence*, 176 N.C. App. 656, 665, 627 S.E.2d 301, 307 (2006) (citations omitted). The "in or affecting commerce" element restricts the otherwise broad scope of the claim, so that the statute does not address all wrongs arising in a business setting, including most employer-employee disputes. *See Dalton v. Camp,* 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001); *see also HAJMM Co. v. House of Raeford Farms, Inc.,* 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991); *Buie v. Daniel Int'l Corp.,* 56 N.C. App. 445, 448, 289 S.E.2d 118, 119–20

(1982) (holding employer-employee relationships outside the scope of N.C. Gen. Stat. § 75-1.1).

51.     However, "the mere existence of an employer-employee relationship does not in and of itself serve to exclude a party from pursuing an unfair trade or practice claim." *Durling v. King,* 146 N.C. App. 483, 488, 554 S.E.2d 1, 4 (2001) (quoting *Dalton,* 353 N.C. at 656, 541 S.E.2d at 197); *see Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 746, 641 S.E.2d 695, 698 (2007) (holding that even assuming *arguendo* that actions taken by an employer were unfair or deceptive, they could not be the basis of a UDTP claim because they did not have any impact beyond the employment relationship and were not "in or affecting commerce").

52.     The North Carolina Supreme Court has recognized generally a UDTP claim between an employer and employee where the claim was based on the employee's acts in commerce outside his employment duties. *Sara Lee Corp. v. Carter,* 351 N.C. 27, 34, 519 S.E.2d 308, 312 (1999). This Court has previously distinguished the holding in *Sara Lee* when determining that the case does not support a UDTP claim based on the employment relationship itself when such additional acts in commerce are absent. *Urquhart v. Trenkelbach,* 2017 NCBC LEXIS 12, at *14 (N.C. Super. Ct. Feb. 8, 2017); *Kingsdown, Inc. v. Hinshaw,* 2015 NCBC LEXIS 30, at *27–29 (N.C. Super. Ct. Mar. 25, 2015).

53.     The factual allegations of the Amended Complaint do not fall within the scope of the *Sara Lee* holding. With no basis to satisfy the "in or affecting commerce" element, Gupta's UDTP claim is not saved by his allegations of misrepresentations

made to induce the employment relationship. *See Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at *10–12 (N.C. Super. Ct. Oct. 11, 2017) (allowing a UDTP claim based on misrepresentation to proceed when a breach of contract claim would not support such a claim absent aggravating circumstances).

**F.     Fraudulent/Negligent Misrepresentation**

54.     In addition to his contract claims, Gupta alleges tort claims based on fraud or, alternatively, negligent misrepresentations. (Am. Compl. ¶¶ 152–57.) These are distinct claims. *See Ausley v. Bishop*, 133 N.C. App. 210, 218, 515 S.E.2d 72, 78 (1999) ("Fraudulent misrepresentation focuses on plaintiff's knowing action, while negligent misrepresentation turns on plaintiff's lack of reasonable care."). Negligent misrepresentation "occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). A negligent misrepresentation claim fails when the defendant owes the plaintiff no duty. Even when liberally read, the Amended Complaint here demonstrates no basis to impose a duty on any Defendant arising from the negotiations for the employment relationship. Gupta's negligent misrepresentation claim fails for this reason.

55.     Plaintiff's fraud claim does not require this separate duty. The elements of that claim are "(1) [a f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *S.N.R. Mgmt. Corp. v.*

*Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (citation omitted). Fraud must be alleged with particularity. N.C. R. Civ. P. 9(b). A claimant is expected to allege "time, place, and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *S.N.R. Mgmt. Corp.*, 189 N.C. at 610, 659 S.E.2d at 449 (emphasis and citation omitted).

56. The Amended Complaint asserts that Lindberg made misrepresentations to induce Gupta's agreement to become employed while Lindberg had no intention to perform the contracts at the time. That is adequate to state a claim of fraud unless it is barred by a separate defense disclosed on the face of the Amended Complaint. Moving Defendants assert that such a defense is evident, because Gupta's tort claims are barred by the economic loss rule. (Br. Supp. Mot. Dismiss Compl. ¶ 46.)

57. Moving Defendants in their brief fail to recognize that the economic loss rule applies differently to claims based on negligence and those based on fraud. "[W]hile claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both [breach of contract and fraud] claims[.]" *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 34, 795 S.E.2d 253, 259 (2016) (quoting *Jones v. Harrelson & Smith Contractors, LLC*, 194 N.C. App. 203, 215, 670 S.E.2d 242, 250 (2008)).

58.     Ultimately, if Gupta affirms the contracts at issue and bases his relief on them, his remedy may be exclusively a contract remedy resulting in dismissal of his fraud claim.   *See Rountree v. Chowan County*, 252 N.C. App. 155, 159, 796 S.E.2d 827, 830 (2017) ("It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.").   That is a determination to be made at a later time.  The Court determines that at this stage of the litigation, Gupta is entitled to pursue both his breach of contract claims and his fraudulent misrepresentation claim.[1]

59.     However, the Amended Complaint only alleges misrepresentations by Lindberg made on behalf of Eli Global or Eli Research.  While the Court finds these allegations to be sufficiently specific to satisfy Rule 9, Gupta's fraud claim should then be limited to Lindberg, Eli Global, and Eli Research.

### G.     Unjust Enrichment

60.     Gupta's unjust enrichment claim is an alternative claim to his contract claims.  Defendants contend that the claim should be dismissed at the early pleading stage pursuant to *S.E. Shelter Corp. v. BTU, Inc.*, which held that, because a contract existed and no breach of contract claim was asserted, the law would not imply a

---

[1]   While its ruling on the Motion is confined to its reading of the Amended Complaint and documents to which it refers, and Defendants have not yet answered the Amended Complaint.  The Court notes that at oral argument Defendants' counsel responded to the allegations that Lindberg had no intention to honor his promises at the time he made them by asserting clearly that Defendants do not and will not argue that the various agreements were not validly entered and enforceable in accordance with their terms.   Their position is rather that those terms allowed for Defendants to determine that cause existed to terminate the contracts, thereby defeating Gupta's right to recover under them, and that Gupta is bound by this determination.

contract, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). (Br. Supp. Mot. Dismiss Compl. ¶ 48.) The Court has previously determined that Gupta has alleged breach of contract claims. It is proper to plead unjust enrichment in the alternative to a breach of contract claim "even if [the] plaintiff may not ultimately be able to prevail on both." *James River Equip., Inc. v. Mecklenburg Utils., Inc.* 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006).

61.     The Court concludes that the unjust enrichment claim is properly plead in the alternative to the breach claims and that the claim should survive the Motion.

## H.     **Punitive Damages**

62.     Defendants challenge whether one can assert an independent claim for punitive damages. (Br. Supp. Mot. Dismiss Compl. ¶ 49.) Punitive damages is a tort remedy rather than a contract remedy. *See* N.C. Gen. Stat. § 1d-15(d) ("Punitive damages shall not be awarded against a person solely for breach of contract."). The Court defers its ruling on whether Gupta can pursue any recovery of punitive damages.

## I.     **Tortious Interference with Contract**

63.     Gupta seeks to impose personal liability on Lindberg for having tortiously interfered with the SARS and Bonus Agreements. (Am. Compl. ¶¶ 167–75.) Lindberg responds that, as a corporate insider, he is entitled to a presumption his actions with respect to the contracts were in the interests of the corporations which made the agreements and that the exception to that presumption (which

applies when a non-outsider acts maliciously) should not apply. (Br. Supp. Mot. Dismiss Compl. ¶¶ 27–28.)

64. The acts of a corporate officer are generally presumed to have been done in the interests of the corporation, but that presumption may be "overcome when the means or the officer's motives are improper." *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992). As the Supreme Court recognized in *Embree*, the issue of qualified privilege of an officer is inherently one of fact such that dismissal at the Rule 12(b)(6) stage is improper where adequate facts challenging an insider's justification are pleaded. *Id.*

> First, the qualified privilege of officers and directors to interfere with the corporation's contracts rests upon the assumption that their actions are "in good faith and for the best interests of their corporation." The question of "good faith" is one of fact to be resolved by the jury and cannot be resolved on a motion to dismiss. Therefore, insofar as the element "without justification" evokes inquiry into defendants' motives, it is enough to allege, as plaintiff did, that the action was done "in their own interest to avoid liability to [plaintiff] for their [personal] guarantees. . . ."

*Embree Constr. Group Inc.* at 499, 411 S.E.2d at 925.

65. Gupta has sufficiently alleged that Lindberg acted without justification. As a result, his tortious interference claim survives the Motion.

### J.      Civil Conspiracy & Piercing the Corporate Veil

66. Gupta alleges a civil conspiracy among the various Defendants to commit fraud and other wrongs against him, so that their respective corporate veils must be pierced. (Am. Compl. ¶¶ 179–85.) North Carolina does not recognize an independent claim of conspiracy. *See Toomer v. Garrett*, 155 N.C. App. 462, 483, 574

S.E.2d 76, 92 (2002). Likewise, piercing of the corporate veil is not an independent claim or theory of liability but "an avenue to pursue legal claims against corporate officers of directors who would otherwise be shielded by the corporate form." *Green*, 367 N.C. at 146, 749 S.E.2d at 271. Nevertheless, the allegations related to those claims are so interwoven with other claims the Court has allowed to survive the Motion, so that the Court's further consideration of the conspiracy claim should be deferred.

## V. CONCLUSION

67.     For the foregoing reasons:

a. The Motion is DENIED as to Gupta's claims for declaratory judgments, breach of contract claims against the movant corporations, breach of implied covenant of good faith and fair dealing, violation of the Wage & Hour Act, unjust enrichment, fraud to Lindberg, Eli Global, and Eli Research; and tortious interference with contract;

b. The Motion is GRANTED as to Gupta's breach of contract claim against Lindberg individually; negligent misrepresentation; unfair or deceptive trade practices; fraud as to all moving Defendants other than Lindberg, Eli Global, and Eli Research; and

c. The Court DEFERS further consideration of claims or remedies related to punitive damages, civil conspiracy, and piercing of the corporate veil of any corporate Defendant.

SO ORDERED, this the 19th day of June, 2019.


                                        /s/ James L. Gale
                                       James L. Gale
                                       Senior Business Court Judge